**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiff**

v.

**The NEW CHEROKEE CORPORATION, Defendant.**

**No. 92 Civ. 8800 (CBM).**

United States District Court, S.D. New York.

July 28, 1993.

James L. Lee, Anna M. Stathis, New York City, Sonya LeCount, of counsel, for E.E.O.C.

Kramer, Levin, Naftalis, Nessen, Kamin & Frankel, New York City, Ellen R. Nadler, Kevin B. Leblang, of counsel, for New Cherokee Corp.

## OPINION ON MOTION TO DISMISS

MOTLEY, District Judge.

This lawsuit was filed by the Equal Employment Opportunity Commission ("EEOC") under the Age Discrimination in Employment Act ("ADEA") to correct defendant's allegedly illegal employment practices. The EEOC in its complaint alleges that defendant New Cherokee Corporation ("New Cherokee") discriminated against former employees Todd Ryan–Millington ("Millington"), Monica Davis ("Davis") and Selma Deszcz ("Deszcz") on the basis of their age in terminating their employment. (Complaint, ¶ 8–9).

An age discrimination charge was originally filed by Millington, but during the investigation of her complaint the EEOC uncovered information that led it to conclude that Davis and Deszcz had also been discriminated against on the basis of their age. Thus, in its determination that there was a sufficient basis to file the instant lawsuit, the EEOC concluded New Cherokee violated the ADEA in regard to its termination of Deszcz and Davis. (July 24, 1992 Determination, attached as Ex. G to Defendant's Motion to Dismiss or for Summary Judgment).[1]

On its behalf defendant contends that Millington was terminated for non-discriminatory reasons, chief among them her alleged disloyalty to current management and her allegedly improper use of company documents. Defendant also contends that any filing of charges on behalf of Davis and Deszcz is improper.

### Nature of the Motion

Defendant has moved for an order pursuant to F.R.Civ.P. 12(b)(1) dismissing the complaint or, in the alternative, for an order pursuant to F.R.Civ.P. 56(b) for a grant of summary judgment. Defendant maintains that the suit must be dismissed because (1) the EEOC allegedly failed to sufficiently investigate the charges because it did not adequately consider the employer's evidence, and (2) because the EEOC allegedly failed to fulfill its statutorily mandated duty to make sufficient efforts to conciliate the claims before filing this lawsuit.

New Cherokee argues that because of an alleged lack of disputed facts the complaint should be dismissed. Defendant has introduced, along with its motions, numerous exhibits falling outside the four corners of the pleadings. The EEOC has responded in kind.

 Since both parties have introduced affidavits and exhibits outside of the pleadings in support of and in opposition to this motion, it is appropriate for the court to consider it as a motion for summary judgment. As noted by defendant, the court "must decide, in light of the [supposedly] undisputed facts surrounding the investigation and conciliation of the underlying discrimination claim: (1) whether it has jurisdiction to hear the EEOC claim, and (2) whether the EEOC has stated a claim upon which relief can be granted." (Reply Memorandum, 1). Defendant has invited the court to treat this motion as one for summary judgment. (Reply, 3 n. 2). Since this determina-

---

1. A complaint has also been filed on behalf of another former employee of New Cherokee, Raymond Franco. The investigation of both cases, as will be clear below, proceeded simultaneously and both cases are based largely upon the same factual allegations.

tion must be based on the existence or non-existence of certain material facts, this motion shall be considered as one for summary judgment.[2]

■ Rule 12(b)(1) motions involve an assertion that subject matter jurisdiction is lacking. When a factual assault of this kind is made via affidavits and exhibits, the District Court should consider it under the summary judgment standard. See, e.g. *Green v. Hill,* 954 F.2d 694, 697–98 (11th Cir.1991), superseded in part on other grounds, 968 F.2d 1098 (1992). New Cherokee's motion is essentially a 12(b)(6) motion since it attacks the sufficiency of statements made in the complaint, specifically the assertion that the EEOC made appropriate attempts at conciliation, and thus should be considered one for summary judgment. *Cortec Industries, Inc., v. Sum Holding L.P.,* 949 F.2d 42, 47 (2d Cir.), cert. den. —— U.S. ——, 112 S.Ct. 1561, 118 L.Ed.2d 208 (1991); see also *Wheeler v. Hurdman,* 825 F.2d 257, 258–59 (10th Cir.), cert. den. 484 U.S. 986, 108 S.Ct. 503, 98 L.Ed.2d 501 (1987) (where subject matter jurisdiction is intertwined with a substantive claim the motion should be converted into one for summary judgment). Whether or not the EEOC complied with certain requirements before filing suit is both a jurisdictional and a substantive question and thus the summary judgment standard is appropriately applied to the instant motion. *S.E.C. v. Glen–Arden Commodities Inc.,* 368 F.Supp. 1386, 1387 n. 1 (E.D.N.Y.), aff'd 493 F.2d 1027 (2d Cir.1974).[3]

The instant motion by defendant to dismiss the lawsuit is based on defendant's contentions that plaintiff failed to adhere to the strict statutory outline in the ADEA, specifically, that the EEOC failed to investigate the employer's evidence as required to by 29 C.F.R. § 1626.4 (1992), and that plaintiff failed to attempt to conciliate the problem via informal methods as required to by Section 7(b) of the ADEA, 29 U.S.C. § 626(b).

■ Under the summary judgment standard, as is well known, the moving party must demonstrate that "there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265, 275 (1986). The burden to establish that no relevant facts are in dispute must be borne by movant, against whom all ambiguities are resolved, *Donahue v. Windsor Locks Board of Fire Commissioners,* 834 F.2d 54, 57 (2d Cir.1987). New Cherokee has failed to shoulder this burden.

*Failure to investigate*

Under the regulations governing the EEOC's procedures in processing Age Discrimination complaints, the "Commission shall ... receive information concerning alleged violations of the Act, including charges and complaints, from any source." 29 C.F.R. § 1626.4. New Cherokee contends, unpersuasively, that the EEOC is therefore somehow obligated to interview anyone provided by the employer; and that failure to do so, regardless of the weight and amount of the other information discovered during the investigation, somehow amounts to a default on the part of the EEOC.

Defendant has provided the court with no supporting decisions from any controlling jurisdiction. Instead, New Cherokee relies heavily on the case of *E.E.O.C. v. Pet Inc., Funsten Nut Division,* 719 F.2d 383 (11th Cir.1983). In *Pet Inc.* the Eleventh Circuit declined to grant an award of fees to defendant corporation where the EEOC's Title VII suit was voluntarily dismissed in part and involuntarily dismissed in part. In doing so the court noted that "the EEOC must learn that an objective evaluation of evidence

---

2. Plaintiff has attacked the sufficiency of the instant motion because in its initial moving papers New Cherokee did not include a list of what it considered to be undisputed facts as directed to by Local Rule 3(g). Since movant has since supplied such a list, and since the court finds against New Cherokee on the merits, this issue need not detain the court overmuch.

3. The only factor militating against conversion of a 12(b)(1) motion to one for summary judgment is the concern that to do so might amount to unfair surprise to the movant. Here, however, no such concern is called for since New Cherokee also moved for summary judgment, and appears in its papers to elect to treat this motion as one for summary judgment. Concern over surprise to movant therefore is not warranted.

is required before a suit of this nature can appear to be maintained in unquestioned good faith." 719 F.2d at 387. This is not a startling proposition, given that every litigant has a legal duty to insure that his or her lawsuit "is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification or reversal or existing law." F.R.Civ.P. 11. However, this Rule has little to do with the suit at bar.

The question before this court is not whether a defendant is entitled to legal fees when it has been subjected to an unreasonable and legally and factually insupportable lawsuit, but whether the EEOC in this case made an adequate investigation into the facts before it filed its suit. The answer to that question is undeniably yes.

■■■ The regulation cited above requires the EEOC to "receive information," not to investigate every possible witness who may have some knowledge. The EEOC adhered to the regulatory command. It interviewed people, reviewed numerous documents, and received numerous position statements and answers to questions from New Cherokee. It offered to interview defendants' witnesses as defendant requested, even though it was under no obligation to do so. Movant has cited to no case where a court has dismissed an EEOC enforcement action because of an inadequate investigation.

The record is quite clear that the EEOC satisfied any duty it may have had to investigate the charges. On May 7, 1991, Millington filed charges with the EEOC alleging age discrimination on the part of the defendant. (Ryan–Millington Charge, Ex. A to EEOC's Memorandum in Opposition) [4]. A request for information directed at New Cherokee Chairman James Reynolds was sent by Gary Arbuckle, the EEOC investigator, May 9, 1991, with regard to Millington's charge, asking Reynolds, "to submit information and records relevant to the subject charge of discrimination." (Ex. C to Memorandum in Opposition).

On May 24, 1991, another former New Cherokee employee, Ray Franco, filed an age discrimination charge. (Ex. B. to Memorandum in Opposition). On May 28, 1991, New Cherokee was sent a notice of charge and request for information as to Mr. Franco. (Ex. E to Memorandum in Opposition).

New Cherokee responded with an eleven-page Position Statement with numerous attachments regarding Millington's termination dated July 26, 1991 (Ex. G to Memorandum in Opposition), and a further Position Statement dated August 5, 1991, in regard to Franco's charge containing ten pages and numerous attachments (Ex. H to Memorandum in Opposition).

A further request for information was transmitted by the EEOC on March 3, 1992 (Ex. I to Memorandum in Opposition). In this request, information was sought as to all employees who worked at New Cherokee from January, 1990 to the present, including, if relevant, their dates of termination and ages at termination. Attached to this request was a questionnaire divided into three sections. Under Section A, Question 2 read as follows: "For each employee whose employment has been terminated provide information as to the reasoning for said termination, name of the person recommending termination, name of the person who gave final approval of that termination and information/documentation supportive of that termination reasoning." (Id. at 2).

From these requests New Cherokee was on notice that the EEOC was seeking information on company-wide terminations. New Cherokee not only had the opportunity, it was explicitly directed to submit information not only regarding Millington and Franco but also in regard to all employees terminated since January 1990.

New Cherokee's sixteen-page response, with attachments, dated April 14, 1992, noted that among those terminated were Davis and Deszcz. (Ex. K to Memorandum in Opposition). In this April 14, 1992 letter New Cherokee repeated its request that the EEOC interview James Reynolds. Investi-

---

4. There is some confusion as to the actual ordering of exhibits, since the EEOC's papers in this action are sloppily compiled, lack tabs to indicate where one exhibit ends and another begins, and are largely unpaginated.

gator Gary Arbuckle advised New Cherokee that while the EEOC had no current plans to do so, it would speak to any witnesses provided by defendant, (Arbuckle Affidavit, ¶ 24, attached to Memorandum in Opposition).

The EEOC then sent a further notice to New Cherokee, dated June 24, 1992, in which it stated that it believed that Franco's termination violated the ADEA. In this Predetermination Letter the EEOC informed New Cherokee that "if there is other information you would like us to consider please submit it" to the EEOC. (Ex. L to Memorandum in Opposition, 2).[5]

By letter dated July 1, 1992, New Cherokee restated its disagreement with the EEOC's understanding of the circumstances surrounding the termination of employees charging age discrimination (Ex. E to Motion to Dismiss or for Summary Judgment). In a further response dated July 2, 1992, on the stated belief that EEOC was not sufficiently serious about interviewing current employees, New Cherokee's counsel formally withdrew a request that the EEOC interview Chairman Reynolds. Nowhere does New Cherokee outline its reasons for preferring an oral interview to the formal submission of documentary evidence. (Ex. N to Memorandum in Opposition). Indeed, not once in its moving papers does New Cherokee ever suggest any reason that documentary submissions are inadequate when compared to an oral interview.

In response the EEOC issued a formal Determination dated July 24, 1992, finding that Millington, Deszcz, and Davis had been terminated in violation of the ADEA (Ex. O to Memorandum in Opposition). The evidence that Deszcz and Davis had experienced age discrimination was gathered in the course of the investigation into the charges filed by Millington (Id.). It also issued another formal Determination dated the same day that Franco had been terminated in violation of the ADEA (Ex. P to Memorandum in Opposition).

Defendant asserts that the EEOC refused to interview New Cherokee's witnesses and limited its investigation solely to interviewing witnesses provided to it by the charging former employees. Even though New Cherokee offered to make any employees available to it, the EEOC, it is charged, refused to hear their testimony. (LeBlang Aff. ¶¶ 5, 9, 10, attached to Memorandum to Dismiss or for Summary Judgment).

However, in no way was New Cherokee prevented from offering evidence. New Cherokee has not disclosed what evidence would be garnered via an interview of Reynolds or other current employees that could not be gathered through the process of allowing New Cherokee to submit written responses. The EEOC in no fashion limited the written evidence that New Cherokee could submit.

■ Defendant also claims that failure to inform it of the charges involving Ms. Davis and Ms. Deszcz before the EEOC's July 24, 1992 determination mandates dismissal of those counts of the suit, since New Cherokee alleges it never had an opportunity to present evidence regarding those two individuals. However, in its earlier requests for information the EEOC asked for information pertaining to the ages of all recently terminated employees.

While "[a]llowing claims for broader relief to proceed, if the charge were so specific to an individual that an employer could not fairly anticipate" the broader claims would "undermine the notice and conciliation requirements of the ADEA," *EEOC v. American Express Pub. Corp.*, 681 F.Supp. 216, 221 (S.D.N.Y.1988), no such concerns are implicated here. Here the notice to the employer put it on alert that broader claims might be filed. *Snell v. Suffolk County*, 782 F.2d 1094, 1100 (2d Cir.1986). The original requests asked for employer-wide information and were not limited merely to evidence concerning Millington.

■ New Cherokee's assertion that the failure of Deszcz and Davis to file charges with the EEOC somehow mandates the dis-

---

5. For some reason, immediately following Exhibit L is the exact same document identified as

Exhibit M.

missal of this action (See Memorandum for Dismissal or For Summary Judgment, 11) is incorrect. "[T]he EEOC's role in combatting age discrimination is not dependent on the filing of charges; the agency may receive information concerning alleged violations 'from any source' and it has independent authority to investigate age discrimination." *Gilmer v. Interstate/Johnson Lane,* —— U.S. ——, ——, 111 S.Ct. 1647, 1653, 114 L.Ed.2d 26, 38 (1991).

New Cherokee, itself, is partly to blame because of its intransigent attitude. If it had expressed some willingness to conciliate the claims of Davis and Deszcz,[6] then it would have had additional opportunities to provide evidence. Instead, by issuing a blanket refusal to even discuss their claims, it left the EEOC with few other options except to file suit.

■ New Cherokee has, like all targets of government action, a due process right not to suffer adverse consequences without some process. The question of what process is due depends upon the surrounding circumstances. *Zinermon v. Burch,* 494 U.S. 113, 127, 110 S.Ct. 975, 984, 108 L.Ed.2d 100, 114–15 (1990). Here, where New Cherokee has been notified in advance of the charges, informed of the factual bases of these charges, and given several opportunities to respond and to provide evidence, New Cherokee's due process rights have been satisfied. Subjects of serious criminal complaints often receive far less. To the extent that New Cherokee may suffer any further adverse actions as a result of the EEOC's instant lawsuit, this court, and the processes of law that apply to any judicial proceeding, provide any process due to defendant.

*Failure to Conciliate*

"Before instituting any action under [the Age Discrimination in Employment Act,] the Equal Employment Opportunity Commission shall attempt to eliminate the discriminatory practice or practices alleged, and to effect voluntary compliance with the requirements of this chapter through informal methods of conciliation, conference, and persuasion." 29

U.S.C. § 626(b). Defendant contends that (1) the EEOC failed to adhere to the requirements of this section because it did not attempt to effect voluntary compliance; and (2) that this alleged failure mandates dismissal of this action. Defendant is wrong on both counts.

By enacting § 626(b) Congress expressed its preference that the EEOC undertake "strong, affirmative attempts ... to effect compliance before resorting to legal action." *E.E.O.C. v. American Express Publishing Corp.,* 681 F.Supp. 216, 221 (S.D.N.Y.1988) citing *Brennan v. Ace Hardware Corp.,* 495 F.2d 368, 374 (8th Cir.1974).

Under a motion to dismiss or for summary judgment such as the instant motion, the court is to assume the truth of the matters alleged in the complaint and in the affidavits of EEOC's counsel and the exhibits attached thereto in order to ascertain whether the EEOC met its obligation to conciliate under the ADEA. *E.E.O.C. v. KDM School Bus Co.,* 612 F.Supp. 369, 373 (S.D.N.Y.1985). This is nothing more than the basic legal standard, applicable to all motions to dismiss or for summary judgment.

■ The EEOC fulfills its duty to conciliate before instituting litigation if it "1) outlines to the employer the reasonable cause for its belief that the employer is in violation of the Act, 2) offers an opportunity for voluntary compliance, and 3) responds in a reasonable and flexible manner to the reasonable attitude of the employer." *E.E.O.C. v. KDM School Bus Co.,* 612 F.Supp. 369, 374 n. 17 (S.D.N.Y.1985); see also *E.E.O.C. v. Dover Employment Agency, Inc.,* 91 Civ. 3796, 91 Civ. 3797, slip. op. at 7, 1992 WL 295979 (S.D.N.Y. Oct. 8, Oct. 9, 1992).

Prior cases have held that a variety of circumstances will indicate that the EEOC is in compliance with the statutory duty to conciliate. Central to all these cases is the proposition that the EEOC must inform the targets of any enforcement action by letter of the perceived violation, state the grounds for the charges, and express some interest in conciliation.

**6.** See further discussion below.

In *Barrett v. Suffolk Transportation Services,* 600 F.Supp. 81 (E.D.N.Y.1984), the court held that where the EEOC sent letters to defendants alerting them to the charges and notifying them that it was interested in resolving the conflict and followed these letters with telephone conversations, § 626(b) is satisfied if the defendants' response is that it did not see its practice of terminating school bus drivers at the age of 65 as a violation of the ADEA. *Barrett,* 600 F.Supp. at 83. See also *E.E.O.C. v. KDM School Bus Co.,* 612 F.Supp. at 373.

■■■■ What is required is that the EEOC "inform[ ] the defendant of the nature and extent of the violations, explain[ ] the relief sought, and g[i]ve the defendant an opportunity to respond." *Marshall v. American Motors Corp.,* 475 F.Supp. 875, 878 (E.D.Mich.1979). Most importantly, when the EEOC notifies the defendant of the violations it seeks to rectify, it must express an interest in conciliation. *E.E.O.C. v. American Express Publishing Corp.,* 681 F.Supp. at 218.

■■■■ The EEOC need not go further and continue its efforts to conciliate if the defendant expresses recalcitrance. "[C]ourts have held that the Secretary is not required to continue efforts after the defendant has stated that it believes it has not been guilty of wrongdoing but may proceed to litigation to determine the issue." *Marshall v. American Motors,* 475 F.Supp. at 879. If the defendant expresses an unwillingness to discuss the charges as formulated by the EEOC, then conciliation efforts need go no further. "If an employer refuses to conciliate or generally denies the allegations and is unwilling to discuss the charges, no further conciliation efforts need be made." *E.E.O.C. v. American Express,* 681 F.Supp. at 221 n. 11.

■■■■ Even if the EEOC is found not to have fulfilled its statutory duty to conciliate, the preferred remedy is not dismissal but instead a stay of the action to permit such conciliation. Where the EEOC has made absolutely no efforts dismissal is appropriate, but where conciliation efforts have been abbreviated, the case should be stayed to allow

sufficient time for the parties to engage in more serious conciliation discussions. *E.E.O.C. v. American Express,* 681 F.Supp. at 22.

■■■■ A brief review of the history of this case reveals that the EEOC satisfied its statutory duty to attempt conciliation before filing suit. The EEOC first expressed a desire to conciliate Millington's claim in the cover letter addressed to New Cherokee's counsel accompanying its Request for Further Information dated March 9, 1992. "Our discussions having included the possibility of negotiating a settlement between Respondent and Ms. Millington, I am awaiting your reply as to Respondent's receptiveness to such action." (Ex. I to Memorandum in Opposition). There is no response in the record to this expression of interest in conciliation.

By letter dated November 24, 1992, EEOC investigator Gary Arbuckle requested that New Cherokee conciliate the claims of Millington, Davis, and Deszcz. (Ex. Q to Memorandum in Opposition). New Cherokee responded by letter dated December 2, 1992, that it would conciliate the claim only of Ms. Millington. (Ex. T to Memorandum in Opposition). In its letter New Cherokee explained that it would not conciliate the claims of Davis and Deszcz, explaining that "neither Ms. Davis nor Ms. Deszcz has filed discrimination charges, nor has the EEOC solicited New Cherokee's reasons for ending their employment. New Cherokee cannot fairly be expected to enter negotiations regarding non-existent claims." (Id.). New Cherokee informed the EEOC that it would not conciliate the claim of Millington if the claims of Davis and Deszcz were on the agenda. However, the EEOC in its request for information specifically asked for information regarding all recently terminated employees, including the reasons for such terminations. As noted above, Davis and Deszcz were included in the responses of New Cherokee. (Ex. K to Memorandum in Opposition, 6–7).

On December 8, 1992, the instant lawsuit was filed. On December 17, 1992, New Cherokee received a letter from the EEOC stating that since the "EEOC has determined that efforts to eliminate the alleged discriminatory practices and to obtain volun-

tary compliance through conciliation as required by § 7(b) of the Age Discrimination in Employment Act, as amended, have been unsuccessful" a lawsuit will be instituted. (Ex. J to Defendant's Motion to Dismiss or for Summary Judgment).

New Cherokee's claim that it did not have to conciliate the claims of Davis and Deszcz is unpersuasive. "If an employer refuses to conciliate or generally denies the allegations and is unwilling to discuss the charges, no further conciliation efforts need be made." *EEOC v. American Express Pub. Corp.,* 681 F.Supp. 216, 221 n. 11 (S.D.N.Y.1988) (collecting cases). Clearly, here is an instance of employer recalcitrance permitting the EEOC to proceed with filing suit, since New Cherokee stated that it was unwilling to conciliate if the claims of Davis and Deszcz were on the agenda. (Ex. I to Motion to Dismiss or for Summary Judgment).

The record thus indicates that the EEOC notified New Cherokee of the reasonable cause for its determination that the termination of Millington, Davis and Deszcz violated the ADEA. The EEOC offered defendant several opportunities for voluntary compliance and responded reasonably to the attitude and posture of New Cherokee. New Cherokee cannot complain that these efforts were less than New Cherokee might have preferred, when defendant's recalcitrance in accepting the charges as formulated by the EEOC was a major reason for their abbreviation. The EEOC has satisfied any duty under § 626(b) to effect voluntary compliance via informal methods of conciliation.

*Conclusion*

The EEOC has breached no duty to investigate and has, in accordance with 29 U.S.C. § 626(b), made sufficient efforts to conciliate the claims of Millington, Davis, and Deszcz before instituting this lawsuit. Therefore, New Cherokee's motion to dismiss the action is denied. The case is to proceed.